May it please the Court, Sarah Costello for appellants. Brooke Joseph is a U.S. citizen. He's married to his wife, Teresita Ching, and has been for five years. However, despite the fact that no one questions whether or not this marriage was bona fide, the agency has denied Mr. Brooke's petition on behalf of his wife under INA 204C because it believes that her prior marriage to Eldon Fong was not entered into in good faith. A serious constitutional question arises with regard to the procedures used to make this type of determination, which forever prohibits Ms. Ching from immigrating to the United States. INA 204C prohibits the approval of any petition on Ms. Ching's behalf forever, for the rest of her life, solely because she entered on the allegation that she entered her prior marriage only for an immigration benefit. The problem is that this finding under 204C is based only on a statement taken under unknown circumstances of Mr. Fong. And this statement prevents Ms. Ching from adjusting her status in removal proceedings and forever prevents her from immigrating from abroad. Without affording her or Mr. Brooke the opportunity to cross-examine Mr. Fong, examine or question the officer who made this statement, fully examine the record before it goes to the board or to the district court, or inquire about the circumstances under which the statement was made. Roberts. Did she request a hearing? Your Honor, before, there is no right to a hearing. No. My question was, did she request a hearing? Before the agency? Yes. There is no right to that type of hearing. You're telling me there's no right, and I'm asking you if she made a request. She and Mr. Brooke were called to an interview. We have no idea what exactly transpired, because whatever notes were taken are not part of the administrative record. Right. But did her, did she or her lawyer request a hearing? That's a simple question I'm asking you. Your Honor, nobody contests here that cross-examination or hearing are not permitted or are not. Am I not making myself clear? I'm asking you if she ever requested a hearing. She did not request it in writing in this record. Did she request it orally? Did she ever request it in any fashion whatsoever? We have, we don't know, because we have no record of what transpired at that interview. Well, you know whether you requested a hearing on her behalf. Correct, Your Honor. We did not. She knows whether she requested a hearing. Now, I'm asking you, did she request a hearing? I don't know why you're fighting me about this. Your Honor, we did not represent her with regard to the first visa petition. Did her previous lawyer request a hearing? I'm sorry? Did her previous representative request a hearing? Not in writing. But, once again, we don't have a record of the administrative interview. So in Bustamante, this Court recognized that a U.S. citizen has the right to due process and fair adjudication of a visa petition filed on behalf of their spouse. Moreover, the Court has long recognized that there is a due process right and the freedom in matters of marriage and in matters of the ability to keep ones in family. Who is the fact finder in this process? The fact finder is solely USCIS with a limited appeal to the BIA. When the administrative record is in the sole control of USCIS. So the papers are submitted to the USCIS and a response is received, a denial? Correct, Your Honor. Correct, yes. They got a denial in the mail, I gather? They got first a notice of intent to deny with only a recitation, a quotation of this alleged statement by Mr. Fong. She then filed a response to that? She had Mr. Brook had 30 days to respond to that. And he did file a response? He did file a response. And they made a ruling that's adverse to you? They denied the petition under INA 204C, which will stand forever. Okay. Let me try again. Did you ask for a hearing at that time? I'm sorry? Was a hearing requested at that point? A subsequent visa petition was filed and a hearing was requested and an opportunity to cross-examine Mr. Fong and the officer who made the statement was requested and denied. So prejudice here is apparent. Without meaningful review of this finding, Mr. Brook is forever separated from his wife. He must choose between his wife and his country. He may lose his job. He may lose ties to his family. He may lose his job. But those consequences would occur if, let's assume for the sake of argument that the agency acted correctly, those are just the consequences, right? But the agency, but the point is, Your Honor, that we understand that there are severe consequences and there are severe consequences throughout the immigration law. But I'm not sure repeating those helps your argument in terms of why, in this case, you're entitled to further process. Because the process that Mr. Brook is due as a U.S. citizen with a constitutionally protected right and the fair adjudication of this petition, this proceeding, is violated by the very, very limited way that he is allowed to review, anybody who is allowed to review this type of finding. Sotomayor, did you ever get any reason for why the appeal was denied or the response was rejected? The Board summarily upheld the denial of USCIS on the grounds, on nearly this statement, this statement alone, in fact, only recitation in the notice of intent to deny of what the statement said. Mr. Brook had no opportunity to even see the actual statement, see which officer made it, if there are any indicators that it was that were suspect on this statement. All of that was completely out of his ability to examine within the course of this proceeding. Do I reserve some time for rebuttal? Yes, Your Honor. I'd like to reserve. Good morning, Your Honors. May it please the Court. My name is Ayla Dice. I'm an assistant U.S. attorney representing the defendant's appellees. The district court's grant of summary judgment in favor of the government should be affirmed because the record evidence supports the finding or the denial of the I-130 petition because of 8 U.S.C. 1154C, which is the marriage fraud bar. The Court asked the parties to come prepared to discuss Pusamant and Padilla, which I'll do in just a moment. I just wanted to update you first that the plaintiff's appellants moved in immigration court to terminate removal proceedings, and that request was granted in May of 2012. So there are no removal proceedings pending. The only thing before the Court is whether the denial of the I-130 petition is proper. But without that, then she has no legal status. Is that right? That's correct. At this time, she has no legal status. Well, it may not be the sole question whether it was proper or not or whether she should be afforded more process. Yes, Your Honor. And I will address the cases that you've asked us to address. I just want to ask, before you do that, would you just tell me why, if you have a contested issue of fact, isn't that what we have here? I mean, either the her the visa depends on whether or not there was a the prior marriage was a sham marriage or not. Isn't that a factual issue? That's a factual issue that was reviewed by the district court under the Administrative Procedure Act. So what the district court looked at was whether the denial was supported by the record evidence, which included a signed confession made under oath to marriage fraud by Mr. Fong. If there's conflicting evidence, that will always be the result. If there was conflicting evidence and plaintiff's appellants were given the opportunity to respond to that confession, that evidence would also be in the record. I just wanted to. So how does the confession that came from, was it Mr. Fong? Yes. It looks to be about 25 words long or so. And in response, Ms. Ching filed a document that's several pages long and much more detailed. How, on what basis would a finder of fact just on the papers find that the 25-word confession is more believable than the lengthy, several-page, detailed affidavit that she filed? Well, the district court and the BIA and USCIS all noted that although it's short, the confession is a statement against interest. It's a confession to marriage fraud. It's a confession to violating the law. It is concise. It just states, I presume. Concise it sure is. But as far as being a statement against interest, it's also her ex-spouse. And it's, you know, animosity between ex-spouses is not unheard of either. I mean, how do you evaluate that that's true just because he said she paid him money to marry? To counter that confession, things that could have been provided, which were not provided here, and I can go through the evidence that was provided, the record evidence, which all predates, other than the declaration by Ms. Ching, all of the record evidence predates that confession and was actually, for the most part, already submitted to the agency in support of Mr. Fong's petition for Ms. Ching. Things that could have been presented to properly, and if we'll discuss a little bit later, Padilla, to plausibly rebut such a confession would be third-party declarations, anything post the confession, anything to show that the marriage was valid that occurred post the confession. I don't know what you're referring to there. For example, documents, a declaration from family members, somebody other than Ms. Ching that could attest that the marriage between Mr. Fong and Ms. Ching was a valid marriage. Did she submit wedding photographs? She – and those photographs had been submitted previously to the agency in support of Mr. Fong. Why aren't those probative? They are probative, but they were weighed – again, they were weighed against a statement against interest made in 2009 by the petitioner, by Mr. Fong. Is that what was said? Was she told that this is a statement against interest and, therefore, it's more probative than the pictures, than the bill that shows that they were living together? It's more probative than your statement? There was not an analysis of the weight of the evidence, but what was said in the notice of intent to deny was the agency has this confession. We give you an opportunity to respond to this evidence that the agency has. The agency collected the evidence that was provided, considered it, and it's clear by the record that they considered it and found that it was – that the confession outweighed. Some anonymous person found that, I guess. First, the USCIS adjudicator found it, and then the BIA. It was appealed to the BIA, and the BIA also reviewed the evidence and affirmed that decision. But all you have is his handwritten statement, right? It's written under oath. Well, wait. Is it really written under oath? I mean, it says it's written under oath, but there's no indication here that it was given before someone entitled to administer oaths. It's an immigration officer. There's no notary seal on it. That's perhaps another discussion of what would consider – what is here is a signature by Mr. Fong, and below it, it was – it was – is this – pardon me. There's a statement in there that says, I duly swear. Right. It's a written statement. I mean, it's a written statement, I grant you. But maybe I'm being too picky, but to say that it was a written statement and that it was given under oath in a way that would give rise to penalties of perjury is another matter, and I'm not sure from the face of the document that I think it rises to that level. The only reason I mention that is that it goes to the probative value of the statement. The – again, it starts with being duly sworn. I make the following statement. It's on a form. Correct. It's on a form. But most of the time, when you have a sworn statement, you have some other indicia that there's a notary, there's a seal, and so forth. I mean, we just dealt with this in a case the other day about the question of whether or not a statement alone is even admissible without having the testaments to it. In any event, for example, the letter that has been referred to that would be plausibly or potentially used to cross-examine this statement is dated November 2005 and was a letter made to – it's at page 90 of the administrative record – was a letter that was written to the agency explaining why Mr. Fong didn't have any tax records to support his I-130 petition. And in that letter, he does say, I loved Ms. Ching. But again, that predates this statement. I want to make sure I have a clear understanding of how this procedurally plays out. Somewhere along the line, the government got wind of the fact or got an idea that she had engaged in a previous sham marriage, right? Yes. Okay. And so the government says, we're going to deny – we have an intent to deny the application for the visa petition. Yes. It gives her a chance to respond in writing. That's correct. Now, did she get a copy of Mr. Fong's statement at that time? She didn't get a copy of the statement, but she got the full text of the statement. In the notice of intent denied, the full text of the statement is there. Okay. Then she filed her lengthy response. She did file her response with the documents that are in the record. Okay. And then an adjudication is made just on the paperwork. Is that – Correct. Is that right? Does she – did she ever request a hearing? No. Does she have any right to request a hearing? There is no legal basis for an adjudicatory hearing in this type of proceeding. If she had, she would have been – it would have been denied, right? Again, it would be – most likely it would have been denied because there is no provision for that. Are they ever held, you know, such hearings? I inquired, and they are very – they could be if there was something that – if, for example, a – Ms. Ching had presented a subsequent declaration or statement from – When you say subsequent and prior, what are you referring to? I'm sorry. I'm referring to the – I'm going to refer to it as a confession. But the statement – written statement by Mr. Fong dated 2009, where he says, I engaged in marriage fraud. And that's prior to or subsequent to what? What are you – That is after his – his petition for – on behalf of Ms. Ching was withdrawn, and it is after all the record evidence that was provided to counter that statement there is no evidence in the record that is dated after the statement was made. I'm sorry if I'm not – Let me tell you the problem I have with this. He comes up with this 25-word statement that says, I never had sex with Theresa. It's 20 – the whole thing is about 25 words. She comes back with an affidavit that reads like the Fifty Shades of Grey, you know, very detailed about their sex life and everything else. I don't understand how – how anybody can – can tell which is – which is true without having a hearing. Again, the – the way it was – the evidence was weighed and it was stated by the adjudicator. What, do they flip a coin? I mean, you know, they have to have some basis to – to say this one is believable and the other one's not. They do take into consideration if the declaration by Ms. Ching was made purely for her interests and purely to – it's a self-serving declaration. That means anything – by that logic, anything that the applicant says is going to be disbelieved. I mean, 100 percent of the time, they're going to lose. It will be weighted less. That's why there's the opportunity to provide evidence from many other people other than themselves only. They would be able to get family members, third – people that had attended the wedding. There's – there's many examples out there that would have been better than what was provided. I didn't get a chance to address Bustamante. Do you want me to? Please go ahead. Just very, very quickly, the government believes that Bustamante does not apply here because the narrow hearing – the narrow holding in Bustamante provided for very narrow review of the denial of a visa petition to get around consular nonreviewability. There's no issue of consular nonreviewability here. If you do apply, Bustamante, the government would win. There is a facially valid reason for denying the visa petition prior marriage fraud, and there's been no allegations of bad faith on behalf of the government. I appreciate your updating us on the status of removal. Do you have a document that would indicate that the termination of removal proceedings? I do not have it with me, but I can provide it to the court that – Do you mind – do you have any objections to it being lodged? Sure. And would you please – The immigration judge is – Very good. Thank you very much. So, first of all, government counsel is mistaken in that the proceedings against Ms. Ching have been terminated. They have not. The immigration judge has administratively closed those proceedings, which is significantly different than termination. The proceedings are still active before the IJ. They're simply shelved until this Court makes a decision. I am under obligation to inform the immigration judge of this Court's decision, at which point the government will likely recalendar and reinstitute proceedings. We'll see the document. Thank you. Regarding Padilla, Padilla is different than this case, because in Padilla, the Petitioner all of the elements of reinstatement, and there is no actual factual dispute to be litigated. Here, there is much evidence in the record regarding whether or not that marriage was real, and therefore, the prejudice standard of the fact that prejudice could be shown is significant. The fact is, is that we have no idea what happened when this statement was made, because no one has had the opportunity to cross-examine Fong or Officer Condon who made the statement. We don't know whether it's self-serving or not. We don't know if Fong was subjected to coercion. We know that the officer encountered him at his home. We have no idea who was there with the other officer, who was at his home, if he was threatened for prosecution for marriage fraud. We have there to characterize his statement as self-serving is completely is not proper, given the fact that we can't examine the circumstances. But in order to have more process, don't you have to have some basis for claiming that you have a liberty or your clients have a liberty of property interest in something? Your Honor, there is here. Both Mr. Brook is a U.S. citizen under Bustamante, which whatever standard Bustamante set out has to do with consular processing and Congress's plenary power to exclude aliens. I think in a circumstance where the spouse is present in the United States, that broader standard of Bustamante for prejudice should not apply. The fact is, is that this statement just has no way to tell if it's reliable Well, certainly it's against interest, I think, at least marginally on its face. He said he's basically admitting to a crime. Your Honor, but we have no idea if that's the case. We don't know whether it was the circumstance that granted that. But, I mean, I think on its face, you have to say that it's against self-interest. But we have no idea if he was persuaded to write that statement as an exchange. I'm just saying on its face. But on its face, that statement is not sufficient to uphold the permanent denial of Mr. Brook's visa petition. Thank you, counsel. Thank you. The case is hereby submitted for decision. Thank you both for your arguments this morning.
judges: Schroeder, Thomas, Silverman